IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**BRUCE CASIAS,**

      Plaintiff,

v.

**RAYTHEON COMPANY, RAYTHEON INFORMATION SYSTEMS COMPANY and/or its business division: INTELLIGENCE, INFORMATION, AND SERVICES**

      Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, BRUCE CASIAS, by and through his attorney, Ralph G. Torres, hereby files his complaint against the Defendant by the allegations set forth below:

## I. JURISDICTION

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, this case arises under 10 U.S.C. § 2409; 18 U.S.C. § 1001, 42 U.S.C. § 1981 and supplemental jurisdiction on violation of Colorado Public Policy claim, pursuant to 28 U.S.C. § 1367.

2.      The unlawful employment practices alleged herein were committed within the Judicial District of Colorado.

3.      This Court has jurisdiction over the parties and claims set forth herein.

## II. PARTIES

4.      Plaintiff, BRUCE CASIAS, ("CASIAS") is a Hispanic male, employed with RAYTHEON COMPANY ("RAYTHEON") from November, 2002

through July 22, 2016 as a Senior Principal Test Engineer.  He was assigned to the GPS OCX Program as the Launch Control System ("LCS") Segment/Element Test Manager, GTE Test Lead and the Test Automation Lead from 2014 through the date of his departure.

5.     Defendant, is a Foreign Corporation registered in the State of Delaware, doing business in Colorado.

6.     At all times material hereto Defendant has employed more than 15 employees.

7.     William Sullivan, Vice-President and program manager of the GPS OCX Program is a white male; Keith Reinke, Vice-President and Deputy Program Manager of the GPS OCX Program is a white male; Edward McFarland, Program Engineer of the GPS OCX Program is a white male, and Joseph Hollon, Integration and Test Cross Product Team Manager of the GPS OCX Program is a white male,  were employees of RAYTHEON and during the time periods relevant to CASIAS's claims had the authority to impose conditions of employment.

### III. ADMINISTRATIVE PROCEDURE

8.     On or about May 17, 2016, CASIAS lodged a complaint on the U.S. Department of Defense's Fraud, Waste and Abuse online system.

9.     On or about May 18, 2016, CASIAS called RAYTHEON's Ethics Complaint line and spoke with Nancy Bloomberg (Defendant's IIS Director of Ethics and Business Conduct) and Garth Chandler about his U.S. Department of Defense complaint.

10.     On or about June 20, 2016, CASIAS was interviewed by Nancy Bloomberg, Ed Geisler, RAYTHEON's IDS Technical Director, and Robert Strauss, RAYTHEON's IIS attorney.

11.     On or about August 16, 2016, CASIAS was informed his complaint was being forwarded to the Air Force Inspector General for any action they deem appropriate.

12.     Pursuant to 10 U.S.C., 2409(b)(2)(A), 180 days have passed since CASIAS' complaint was forwarded to the Air Force Inspector General for investigation with no action being taken.

## IV. FACTUAL ALLEGATIONS

13.     Plaintiff had successfully performed his job duties and responsibilities while employed with Defendant.

14.     The GPS OCX Program was funded by the U.S. Department of Defense and United States Air Force, through a contract with Raytheon Company, a Federal Defense Contractor.

15.     For RAYTHEON to continue to receive payment for its work on the GPS OCX Program, it was required to performed critical tests, complete test procedure development and dry runs of those test procedures in the development of the GPS computer programming which would be used for U.S. Department of Defense military.

16.     The U.S. Department of Defense military uses GPS computer programming for the U.S. Navy's maritime; aircraft and weapon systems navigations; the Air Force for its drone, aircraft, spacecraft, weapon systems and nuclear weapon system navigations; the U.S. Army for its drone, weapon systems and special forces navigations; the Coast Guard for all of its navigation systems.

17.     Having exact GPS coordinates is critical to ensure our U.S. military forces

have exact coordinates by which to locate any threats to the U.S. and take protective action to ensure our citizens' safety.

18.     Part of CASIAS' job duties was to run LCS Segment Element test procedures for the GPS OCX program which was to be utilized, among other things, to launch control systems. This testing procedure development was supposed to be finished pursuant to the contract schedule in November, 2015.

19.     During the test procedure development phase of this program, CASIAS and his team encountered defects and documentation which kept the procedure from being successfully completed.

20.     CASIAS' Caucasian supervisors (in paragraph 6 above) were aware of the test procedure defects.

21.     On or about November 17, 2015, CASIAS and members of his team were directed by manager Joseph Hollon, to change the status of the test procedure pre-dry run from incomplete to complete on all 67 test procedures.

22.     CASIAS told his manager that doing such was unethical, fraudulent and should not be done.

23.     CASIAS was told by manager Joseph Hollon, that these directions were from Program Manager, Bill Sullivan.

24.     CASIAS understood that if he did not follow these directions of his supervisors, he would be terminated from his employment with Defendant.

25.     CASIAS proceeded to change the status of the test procedure results as indicated in paragraph 20 above and presented the changes to the GPS Engineering

Leadership.

26.    On or about November 17, 2015, CASIAS briefed the GPS OCX leadership team, Keith Reinke and Ed McFarlane on the status of the test procedure development; telling those present that he had been directed to change the test procedure status charts from incomplete to complete at the direction of Bill Sullivan. A subordinate, David Martinez was also present at this meeting. The leadership team did not make any attempt to correct the fraudulent test procedure status changes.

27.    CASIAS emailed the altered status charts out to its customers of this project: U.S. Department of Defense, and the U.S. Air Force personnel.

28.    On or about November 18, 2015, CASIAS notified his lead test engineer, Karl Sheldon, of the directions he was given as outlined in paragraphs 20 - 24 above and that changes had been made to change the status from incomplete to complete by making the number of test procedure steps planned equal to actual number of steps developed. CASIAS understood that Mr. Sheldon disseminated this information to the rest of the test team.

29.    When the LCS Segment Element test procedure development phase ended on November 24, 2015; Defendant indicated to its customers: U.S. Department of Defense and U.S. Air Force that the GPS OPX testing procedures were complete, when in fact they were not. Such information was disseminated to these customers in order for RAYTHEON to continue receiving funding by fraudulently representing it had met the deadlines and requirements as set forth in its contract with the U.S. Department of Defense and U.S. Air Force.

30.    CASIAS proceeded to continue to send out this information with altered,

5

incomplete and inaccurate data for the next three test phases of the project (January 10 - May 15, 2016), which continued to give the customers: U.S. Department of Defense and U.S. Air Force the false illusion that all was well with the testing activities of the GPS OPX program; when in fact the procedures were not complete and the Launch Control System was not as mature as the metrics indicated.

31.     On or about May 16, 2016, CASIAS was notified by manager, Joseph Hollon, that he was going to be removed from his job position for making mistakes with the metrics in the GPS OPX testing procedure program, at the direction of the leadership team. Mr. Hollon knew full well, CASIAS did not make any mistakes - he changed the test procedure results at the direction of Mr. Hollon who threatened his future employment if he did not comply. CASIAS was made to be the scapegoat for management's illegal actions.

32.     CASIAS asked that the removal as well as the mistakes he allegedly had made be put in writing and given to him, and that he be placed on a Performance Improvement Plan pursuant to the Company's policies. Such requests were denied. CASIAS also asked if it was customary procedure to remove someone from their positions for making mistakes which were not given to him, written down or any evidence provided to support the allegations of error. Again, such requests were denied.

33.     CASIAS' reassignment removed his supervisory authority from 4 separate groups of approximately 35 employees to one group of 3 employees. Such demotions of responsibility have been a cultural norm in RAYTHEON for employees who buck the system, as did CASIAS.

34.     After CASIAS' reassignment, he was given little or nothing to do. It was a

dead end reassignment which RAYTHEON forced him into solely for the purpose of pushing him to quit.

35.     CASIAS informed manager, Joseph Hollon, that he was going to file an ethics complaint with Defendant's internal process as well as notify the U.S. Department of Defense of the directions he was given and subsequent actions that were taken in paragraphs 20 - 24 above which were fraudulent, abusive and a waste of significant taxpayer dollars.

36.     CASIAS completed the complaint filing process on May 17, 2016

37.     On or about May 31, 2016, an email was disseminated amongst CASIAS's GPX OCX program team of his "reassignment" and being removed from his position.

38.     CASIAS complained to RAYTHEON'S Human Resources Representative - Kelly L. Mann, in Richardson, Texas regarding his removal from his position and the circumstances leading up to that event.

39.     During his interview on June 20, 2016, regarding the ethics complaint, CASIAS informed RAYTHEON that the GPS/OPX system was not mature due to software and hardware issues which made it unable for his team to correctly complete the test procedures. CASIAS explained that the Test Plan describes exit criteria for each phase and the exit criteria for the test development phase was to complete test procedure development. Part of the test procedure was to compile daily status charts which included several metrics based on progress - one in particular was step procedure step count. The team would estimate the number of steps in a procedure and track progress against it. Due to the software and hardware problems the team experienced, the test procedure development did not make any progress during this phase. CASIAS provided the links to the fraudulently altered status

charts he created that were provided to the customer.

40.     CASIAS repeatedly informed RAYTHEON that its actions against him were

reprisal and in retaliation for him filing his ethics complaint.  He did not make the metrics

mistakes, he was directed by his supervisor, Joseph Hollen by William Sullivan to make

those changes and threatened with his job if he did not.

41.     On July 20, 2016, Nancy Bloomberg telephoned CASIAS and asked if he was

leaving the company. CASIAS informed her that he had been retaliated against by being

removed from his position and that his reputation and career was over at Raytheon after

having made his ethics complaint. Ms. Bloomberg informed CASIAS that the investigation

was still ongoing and that she wanted his contact information to let him know status at its

conclusion.

42.     On or about July 22, 2016, Complainant left his employment with

RAYTHEON due to his being directed to change test procedure results by his supervisor,

reporting false and misleading procedure results to the U.S. Department of Defense and U.S.

Air Force; being removed from his position allegedly for metric errors he did not make and

which were not substantiated to him and having his reputation and credibility impugned as an

electrical engineer ruined amongst his colleagues, which could also affect his reputation

within a very small community of defense contractor employers.

43.     On or about September 15, 2016, Nancy Bloomberg informed CASIAS that

they "have completed our investigation and concluded that the GPS OCX program was

transparent with the government customer in formal reviews regarding the status of test

procedure development and preparation to enter Software Integrity Dry Run.

44.     Throughout CASIAS' employment with Raytheon, there was an Engineer Fellow Nomination program for promotions which included a higher salary, stock options and yearly bonuses.  CASIAS was a Labor Grade E06 for 12 out of the 13 years he was employed with Raytheon and applied for these promotion opportunities from 2005 through 2014.   Each year he was denied such promotion and held back, which CASIAS believed was due to his national origin/Hispanic ethnicity, as the nominees and selectees were mostly white males.

### V. FIRST CLAIM FOR RELIEF
#### (Violations of 10 U.S.C. §2409)

45.     CASIAS hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

46.     CASIAS was directed by his RAYTHEON supervisors to change the status of the test procedure pre-dry run from incomplete to complete on all 67 text procedures and forward the fraudulent status reports to its customers, the U.S. Department of Defense and U.S. Department of Air Force; exercised his right to report the fraudulent testing results to RAYTHEON's internal ethics and the U.S. Department of Defense, Fraud, Waste and Abuse online system; was removed from his position within the GPS/OCX group; had his duties diminished; erroneously accused of metric errors - making him the scape goat for his supervisors directions; fearful of losing his job if he did not do as directed by his supervisor; having his reputation and credibility impugned as an electrical engineer ruined amongst his colleagues, which could also affect his reputation within a very small community of defense contractor employers.

47.     CASIAS informed RAYTHEON that such actions were unethical, fraudulent and

should not be done. When he was threatened with his job position, he informed his supervisors he would be filing an ethical complaint regarding these actions with RAYTHEON's internal complaint process.

48.     CASIAS also exercised his right to file a complaint of mismanagement, waste of funds and specific danger to public health or safety with the U.S. Department of Defense and U.S. Department of Air Force.

49.     RAYTHEON's managers violated the protections afforded CASIAS by retaliating against his complaining by falsely accusing him of mistakes to testing metrics he did not in fact make, demoting him and ruining his reputation within a small community of defense contractors and future employment opportunities.

50.     RAYTHEON's actions were intentional and violated 10 U.S.C. § 2409.

51.     As a result of the conduct of the Defendant and its agents as above-described, CASIAS has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of opportunity for professional growth and for pain, suffering, emotional distress and punitive damages.

52.     CASIAS claims reasonable attorney's fees in an amount to be determined at trial and requests injunctive and declaratory relief, and compensatory and punitive damages for the acts complained of.

## V. SECOND CLAIM FOR RELIEF
### (Constructive Discharge)

53.     CASIAS hereby incorporates and realleges the preceding paragraphs as if state

fully, herein.

54.     CASIAS was directed to fraudulently change test procedure results for GPS programs which directly affect the success of our country's military - the U.S. Department of Defense and the U.S. Air Force programs. Such fraudulent reports were required for Defendant to continue to receive funding for its operations.

55.     CASIAS exhausted the various avenues of ethical waste and fraud reporting, informing his GSP/OCX team, supervisors and others in order to seek help in not only reporting these fraudulent activities but to remedy the actions taken. Each effort was rejected.

56.     After having performed successfully for many years with RAYTHEON and understanding its working cultural environment, being removed from his job position, being demoted in supervisory responsibilities and assignments, without any written justification for the same; and in violation of the Company's policies and procedures, he was left going to work with little to no assignments, loss of critical team supervision and responsibility, loss of collegial respect amongst other engineers, having his reputation impugned amongst a very small community of defense contractors and effectively put on a track of action by RAYTHEON to force him to quit.

57.     As a result of the conduct of the Defendant and its agents as above-described, CASIAS has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of opportunity for professional growth and for pain, suffering, emotional distress and punitive damages.

58.     CASIAS claims reasonable attorney's fees in an amount to be determined at trial and requests injunctive and declaratory relief, and compensatory and punitive damages for the

discrimination complained of.

### IV. THIRD CLAIM FOR RELIEF
#### (Violation of Colorado Public Policy (18 U.S.C. § 1001)

59.     CASIAS hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

60.     18 U.S.C. § 1001 states: "whoever, in any manner within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully, (1) falsifies, conceals or covers up by any trick, scheme or device a material fact; (2) makes any materially false, fictitious or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years...or both:

61.     The statutory prohibition in 18 U.S.C. § 1001 is designed to protect governmental departments from deceptive practices described in the statute and is intended to favor truthfulness and accuracy in governmental reports.

62.     Other state, federal and professional rules prohibit fraudulent or deceptive conduct such as that directed by Defendant RAYTHEON as described herein.

63.     RAYTHEON's directive to CASIAS to falsify test results and reports to its customers in order to ensure its continued government funded contracts violate the prohibitions of 18 U.S.C. § 1001 and other federal, state and professional legal requirements.

64.     CASIAS informed RAYTHEON that he believed the directive was unethical, wrong and should not be done, yet RAYTHEON demanded he do what he was told to do.

65.     RAYTHEON removing CASIAS from his position and forcing his

constructive discharge as described herein is contrary to the public policy of the State of

Colorado.

66.     As a result of the conduct of the Defendant and its agents as above-described,

CASIAS has been damaged in an amount to be determined at trial, including loss of wages,

diminution in earning capacity, damage to his reputation, loss of opportunity for promotion,

loss of benefits, loss of opportunity for professional growth and for pain, suffering, emotional

distress and punitive damages.

67.     CASIAS claims reasonable attorney's fees in an amount to be determined at

trial and requests injunctive and declaratory relief, and compensatory and punitive damages

for the discrimination complained of.

## VIII. FIFTH CLAIM FOR RELIEF
### (Retaliation for Whistleblowing)

68.     CASIAS hereby incorporates and realleges the preceding paragraphs as if

stated fully, herein.

69.     The actions against CASIAS by RAYTHEON after he lodged a complaint on

the U.S. Department of Defense Fraud, Waste and Abuse online system on May 17, 2016 are

retaliatory. These actions include (but not limited to) telling his supervisor that he would be

filing a complaint with RAYTHEON's ethics department regarding the falsifications - which

he did but RAYTHEON did nothing to provide assistance; being told by his manager, Joseph

Hollon, that he was going to be removed from his position for mistakes made on the metrics -

which in fact he did not make; having an email sent out to all his co-workers about his

reassignment and his replacement on the GSP/OCX team; having his duties and

responsibilities diminished; having his stellar engineer reputation amongst his co-workers and the small community of defense contractors impugned.

70.    As a result of the conduct of the Defendant and its agents as above-described, CASIAS has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, damage to his reputation, loss of opportunity for promotion, loss of benefits, loss of opportunity for professional growth and for pain, suffering, emotional distress and punitive damages.

71.    CASIAS claims reasonable attorney's fees in an amount to be determined at trial and requests injunctive and declaratory relief, and compensatory and punitive damages for the discrimination complained of.

## VIII. SIXTH CLAIM FOR RELIEF
### (Race/National Origin (Hispanic)
### Terms and Conditions of Employment- 42 U.S.C. § 1981)

72.    CASIAS hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

73.    CASIAS had an employment contract with Defendant and satisfactorily performed her job duties and responsibilities.

74.    CASIAS was subjected to different terms and conditions of employment from his similarly situated co-workers due to his race/national origin (Hispanic).

75.    The conduct acts and omissions of Defendant and/or its supervisors/managers and co-workers, were intentional, and deprived CASIAS of his right to be free from different terms and conditions of employment. Defendant and its supervisors and co-workers denied CASIAS the benefits of employment with Defendant, as described above, denying him the

Engineering Fellow nomination promotions, reducing his supervisory responsibilities, including forcing his constructive discharge, because of his race/national origin - Hispanic, as guaranteed by 42 U.S.C. § 1981.

76.     Similarly situated, non-Hispanic employees were not treated the same as CASIAS.

77.     The conduct of the Defendant and/or its supervisors/managers and co-workers as above alleged, has been attended by circumstances of malice and wanton and reckless disregard for the rights and feelings of CASIAS.

78.     As a result of the conduct of Defendant and/or its supervisors as above alleged, CASIAS has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, loss of benefits (including retirement) loss of opportunity for professional growth and for pain and suffering and emotional distress.

79.     Additionally, CASIAS claims punitive damages in an amount to be determined at trial.

80.     CASIAS claims reasonable attorney fees in an amount to be determined at trial and requests injunctive and declaratory relief, compensatory damages, reinstatement and backpay with full benefits as of the date of his termination.

## VI. SEVENTH CLAIM FOR RELIEF
### (Retaliation - Race/National Origin (Hispanic) pursuant to 42 U.S.C. § 1981)

81.     CASIAS hereby incorporates and realleges the preceding paragraphs as if stated fully, herein.

15

82.     The conduct of Defendant and/or its managers and supervisors as above alleged were in retaliation for advocating for his rights to be free from discrimination, subjected CASIAS to different terms and conditions of employment as described above denying him the Engineering Fellow nomination promotions, reducing his supervisory responsibilities (which he protested), including forcing his constructive discharge - all violate his rights as guaranteed by 42 U.S.C. § 1981 and were due to his race/national origin - Hispanic.

83.     The conduct acts and omissions of Defendant and/or its supervisors/managers and co-workers, were intentional, and deprived CASIAS of his right to be free from retaliation and different terms and conditions of employment.

84.     Defendant and/or their supervisors denied CASIAS the benefits of employment with Defendant after he complained about discrimination, removing him from his position, forcing his constructive discharge, due to his race/national origin - Hispanic, as guaranteed by 42 U.S.C. § 1981.

85.     Similarly situated, non-Hispanic employees were not treated the same as CASIAS.

86.     The conduct of the Defendant and/or their supervisors/managers and co-workers as above alleged, has been attended by circumstances of malice and wanton and reckless disregard for the rights and feelings of CASIAS.

87.     As a result of the conduct of Defendant and/or their supervisors as above alleged, CASIAS has been damaged in an amount to be determined at trial, including loss of wages, diminution in earning capacity, loss of benefits (including retirement) loss of opportunity for professional growth and for pain and suffering and emotional distress.

88.     Additionally, CASIAS claims punitive damages in an amount to be determined at trial.

89.     CASIAS claims reasonable attorney fees in an amount to be determined at trial and requests injunctive and declaratory relief, compensatory damages, reinstatement and backpay with full benefits as of the date of his being removed from his position.

WHEREFORE, CASIAS prays that this Court enter an Order as follows:

A.     An injunction against Defendant preventing it from retaliating against its employees for whistleblowing activity as well as discriminating against its employees for advocating their rights under 42 U.S.C. § 1981.

B.     Reinstate to CASIAS all benefits, wages, front and back pay, which were lost as a result of him being directed to prepare fraudulent reports to the U.S. Department of Defense and U.S. Air Force; being removed from his position, having his employee reputation imputed amongst a very narrow market of potential defense contract employers and being constructively discharged.

C.     Reimburse CASIAS for all reasonable and necessary expenses incurred due to the discriminatory actions of Defendant.

D.     Award CASIAS compensatory, punitive and other damages against Defendant in an amount to be determined at trial for the personal humiliation, severe emotional pain, inconvenience, mental anguish and loss of enjoyment of life he has suffered due to the actions of Defendant;

E.     Award CASIAS his costs of this action and reasonable attorney's fees, expert fees, pre- and post judgment interest;

G.     Retain jurisdiction over this action to insure full compliance with the Orders of this Court; and

H.    Grant CASIAS such other and further relief as this Court deems just and proper.

**CASIAS REQUESTS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

DATED this_____day of November, 2017.

LAW OFFICE OF RALPH G. TORRES

_/s Ralph G. Torres   _____
Ralph G. Torres
1801 Broadway, Suite 1100
Denver, Colorado 80202
Phone: (303) 297-8427; Fax: 303-292-0522
*Attorney for Plaintiff*

**Address for Plaintiff:**

c/o LAW OFFICE OF RALPH G. TORRES

18