IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-2635-MSK-SKC

BRUCE CASIAS,

    Plaintiff,

*v.*

RAYTHEON COMPANY,

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court upon the Defendant's Motion for Summary Judgment (**# 38**), the Plaintiff's Response (**# 41**), and the Defendant's Reply (**# 42**). For the reasons that follow, the Motion is granted, in part

### I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

### II. BACKGROUND[1]

Plaintiff Bruce Casias, who is Hispanic, was employed as a lead test engineer at Defendant Raytheon's Aurora Campus. He worked on Raytheon's contract with the United States Air Force to produce the next generation of satellites — the GPS OCX Program. He reported directly to Joseph Hollon, who ultimately reported to Bill Sullivan through a couple of layers. In 2015, Mr. Casias was responsible for developing and running test procedures called dry runs for the GPS OCX Program. In this capacity, he supervised around 35 employees.

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to Mr. Casias, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

In November 2015, a number of test procedures had been developed but remained incomplete because Mr. Casias and his team encountered defects preventing successful completion. On orders from Program leadership, Mr. Hollon directed Mr. Casias to change these procedures from "incomplete" to "complete". Mr. Casias expressed concern that doing so was unethical and contrary to Raytheon's contract with the Air Force. He also expressed these concerns to Program leadership at a meeting. He nevertheless made the changes, worried that he would be terminated if he did not.

In May 2016, Mr. Hollon reassigned Mr. Casias to a different role in the GPS OCX Program where he developed software scripts. The number of employees under his supervision decreased to two. Mr. Casias and others considered the reassignment a demotion. When Mr. Casias asked why he was being reassigned, Mr. Hollon told him it was due to inaccuracies in the data he had been working with — the same data he had been told to change. The nature of the inaccuracies was that they were caused by Mr. Hollon's prior direction. Mr. Casias sought and obtained employment elsewhere in July.

Raytheon maintains a designation of Engineering Fellow for certain employees who exhibit ingenuity and resourcefulness. During his tenure at Raytheon, Mr. Casias applied for the designation but never received it.

In this action, following the Court's order (**# 28**) on Raytheon's Motion for Judgment on the Pleadings (**# 18**), Mr. Casias has two claims: (1) retaliation in violation of the Defense Contractor Whistleblower Protection Act based on his reassignment and constructive discharge, and (2) discrimination on the basis of race/national origin in violation of 42 U.S.C. § 1981 based on not being accepted as an Engineering Fellow. Raytheon moves for summary judgment on both claims (**# 38**).

## III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producers Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV.  DISCUSSION

Raytheon seeks summary judgment on both claims. Raytheon argues that Mr. Casias cannot establish a *prima facie* case of retaliation because his reassignment was not an adverse action, and his protected activity was not a contributing factor in those actions. As to his claim for discrimination, Raytheon contends that there is no evidence his race or national origin was a factor in any of its decisions. The Court discusses each claim in turn.

### A.  Retaliation

The Defense Contractor Whistleblower Protection Act protects defense-contractor employees who report misconduct on the part of their employers with respect to any Department of Defense contracts. 10 U.S.C. § 2409. The Act expressly incorporates the "legal burdens of proof specified in section 1221(e) of title 5." 10 U.S.C. § 2409(c)(6). 5 U.S.C. § 1221(e), in turn, requires that an employee show his protected activity was a "contributing factor" in an adverse employment action taken against him, and allows the contractor to then demonstrate, by clear and convincing evidence, that it would have taken the same personnel action notwithstanding the protected activity. 5 U.S.C. § 1221(e). Thus, to establish a *prima facie* case under of retaliation under the Act, a plaintiff must prove that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) such protected activity was a contributing

factor in the adverse action taken against him.  *See Cejka v. Vectrus Sys. Corp.*, 292 F. Supp. 3d 1175, 1192 (D. Colo. 2018); *United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610 (E.D. Va. 2016).  Protected activity under the Act includes reporting evidence of gross mismanagement of a DOD contract or a substantial danger to health or public safety.  10 U.S.C. § 2409(a)(1)(A).

   1. *Adverse Employment Action*

Mr. Casias alleges that his reassignment was an adverse employment action.[2]  Raytheon contends that Mr. Casias' reassignment was not a demotion and therefore was not adverse.  The Act's statutory definition of an adverse employment action encompasses more than simple a discharge.

10 U.S.C. § 2409(a) protects employees who are "discharged, demoted or otherwise discriminated against" as a result of engaging in protected activity.  The Court has not found any authority interpreting this passage.  Raytheon points the Court to a large collection of Tenth Circuit authority that appears to be outdated.  In 2006, the Supreme Court overhauled what the Court may consider to be adverse employment actions for purposes of retaliation under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–70.  Specifically, in *White*, the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse".  *Id*. at 68.  Though Title VII differs slightly from the Act, the Court applies this objective-reasonableness analysis over the prior Tenth Circuit authority for two reasons.  First, *otherwise discriminated against* is so broad that it could encompass a wide variety of conduct without consideration of a reasonableness component, and

---

[2]  Mr. Casias also alleges an adverse action on a theory of constructive discharge.  In light of the Court's decision on the retaliation claim based on reassignment, and because the only difference between the reassignment or constructive discharge as the adverse action would be for purposes of calculating damages, the Court does not reach that question here.  The issue can be addressed in the proper context at trial.

second, Title VII is essentially the exemplar that all antidiscrimination and antiretaliation provisions follow.

Looking to the context in this case, the Court notes that Mr. Casias was reassigned, but he experienced no reduction in pay, no change in benefits, no change in title, and no change in supervisor. As far as the Court can see, two things changed: the number of people directly reporting to him and the scope of his work. Mr. Casias went from supervising around 35 employees to supervising two. And he went from developing and running test procedures on software in the GPS OCX program to developing software test scripts for the GPS OCX program (**# 41-4 at 52:12–15**, **77:13–16**.) The central fact that Mr. Casias must prove is that these changes were objectively so much less desirable that the transfer can be considered materially adverse.

On this question, Ms. Casias has come forward with the following evidence. Though his affidavit contains mostly statements about his discrimination claim, his deposition mentions "lots of people" who considered his reassignment a demotion. (**# 41-4 at 154:24–155:22**.) The affidavit of Karl Sheldon explains why his reassignment, which appears to have been the same as Mr. Casias' reassignment, was a demotion — because he was reduced to managing nothing and merely supporting the effort. (**# 41-1 ¶ 9**.) He also states that Mr. Hollon told him he was "removed" due to his association with Mr. Casias. (**# 41-1 ¶ 3**.) The affidavit of David Martinez states that Mr. Casias "suffered a substantial reduction of his duties and responsibilities" and that he "considered [the] removal a demotion". (**# 41-3 ¶ 4**.) Viewing this evidence in the light most favorable to Mr. Casias, it paints a picture where it was obvious to Raytheon employees that the reassignment was punishment for inaccurate data. It is sufficient to create a triable issue of fact as to whether Mr. Casias' reassignment was a materially adverse action taken against him.

### 2. Contributing Factor

The bulk of Mr. Casias' evidence is geared toward showing the connection between his statement to Mr. Hollon and other GPS OCX leaders about his ethical concerns and his reassignment.  While the relationship between the two is temporally attenuated, Mr. Casias testified in his deposition that Mr. Hollon expressly told him why he was being reassigned and who made the decision — Mr. Hollon "said that he was directed to remove me [from] my position because the metrics data that I was reporting was inaccurate".  (**# 41-4 at 24:16–18**, **79:8–10**.)  Mr. Casias then testified that the metrics data was inaccurate because he "was directed to change that data to reflect completion when we were not complete" by Mr. Hollon.  (**# 41-4 at 80:5–12**.)  Mr. Casias also stated that, in a meeting with program leadership, he told them he "was directed to change [the data] to indicate that we were complete when, in fact, we were not."  (**# 41-4 at 90:24–91:3**.)  Thus, viewing both the temporal delay this evidence in the light most favorable to Mr. Casias, there is a triable issue of fact regarding the reasons for his reassignment.  He has established a *prima facie* case of retaliation such that a trial is necessary.

### 3. Rebuttal

The Act allows Raytheon to respond with clear and convincing evidence that it would have reassigned Mr. Casias regardless of any protected activity.  It points to evidence that Mr. Casias was reassigned because his team was not making adequate progress in providing status updates and that Mr. Hollon did not consider Mr. Casias' protected activity whatsoever in deciding to reassign him.  (**# 38-6 ¶¶ 7–10**.)  All of this evidence is inconsistent with Mr. Casias' deposition testimony about Mr. Hollon's contemporaneous statements.  Accordingly, a factual dispute exists.  Summary judgment is inappropriate on this claim.

**B. Discrimination**

42 U.S.C. § 1981 prohibits discrimination on the basis of race in the formation and execution of contracts, including "contracts" for employment at will. *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999). For purposes of § 1981, discrimination against individuals of Hispanic ethnicity constitutes a form of prohibited race discrimination. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000). Discrimination claims under § 1981 are analyzed using the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1533 (10th Cir. 1995). To establish a *prima facie* case of discrimination under § 1981, a plaintiff must show that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was occupying, (3) he suffered an adverse employment action, and (4) the circumstances surrounding such action give rise to an inference of discrimination. *Barlow v. C.R. England Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). Under *McDonnell Douglas*, if a plaintiff is successful in establishing a prima facie case, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for taking the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden returns to the plaintiff to show that the reasons proffered are pretextual. *EEOC v. PVNF LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

Following the Court's order (**# 28**) on the Motion for Judgment on the Pleadings, the only adverse employment action supporting this claim is Mr. Casias' rejection from the Engineering Fellows program. Raytheon challenges only the fourth element, arguing that Ms. Casias cannot establish any circumstances giving rise to an inference of discrimination. Discrimination can be inferred from direct evidence of a variety of circumstances, such as actions or remarks reflecting discriminatory animus by decisionmakers, a pattern of recommending the plaintiff for inapposite

positions, or the timing or sequence of events leading to termination. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). Discrimination can also be inferred from indirect evidence of preferential treatment toward similarly situated employees who are not members of the protected class. *Barlow*, 703 F.3d at 505.

In his Response, Mr. Casias identifies the following evidence giving rise to an inference of discrimination:

- The Engineering Fellows leadership team was aware of Ms. Casias' race and national origin.
- When Mr. Casias asked why he was not promoted in the program, he was not given any response.
- In the time that Mr. Sheldon has been with Raytheon, he has never known of any Hispanics being a part of the program.
- Over a three-year period and 46 nominees for the program, only three were not white and only one was Hispanic.
- Karen Casey, a lesser-qualified white female, was nominated three years in a row and selected for the program, while Mr. Casias was not.

Awareness is not evidence of discrimination; neither is a lack of response and reasoning. In the same vein, the percentage of Hispanic fellows in the program is probative of nothing without evidence of the racial composition of Raytheon employees or engineers. The Tenth Circuit has recognized that in individual disparate treatment cases, "the focus is on how and why an employer treated a particular individual the way it did . . . [thus] statistical evidence of the employer's general hiring patterns is considerably less probative" than for disparate impact

cases. *Bullington v. United Air Lines Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Karen Casey, however, could be a similarly situated employee. Raytheon asserts she is not because she was not a Test Engineer at the Aurora Campus. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). "In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

Problematically, Mr. Casias has produced almost no evidence about Ms. Casey. All the Court can ascertain is that she was nominated between 2013 and 2015. (**# 41-7**.) Mr. Casias testified in his deposition that he did not know the nature of Ms. Casey's education, what positions she has held at Raytheon, or the substance of her performance reviews. (**# 41-4 at 182:3–17**.) He also stated that Ms. Casey worked on proposals while he worked on programs (**# 41-4 at 181:1–5**) and that he did not know of any test engineers working in Aurora who were selected as Engineering Fellows. (**# 38-5 at 74:9–12**.) Mr. Casias' only evidence about Mr. Casey being unqualified for a fellowship is not even evidence — it is counseled argument in his brief and conclusory at that. Even viewing this evidence in the light most favorable to Mr. Casias, the Court is unable to determine whether Ms. Casey was similarly situated, and if anything, it appears she was not. Thus, Mr. Casias has failed to establish a *prima facie* case of discrimination under § 1981. Summary judgment is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 38**) is **GRANTED IN PART**.  The Plaintiff's discrimination claim is DISMISSED.  The retaliation claim shall proceed to trial.  The parties shall submit their joint final pretrial statement within 14 days and the matter will be scheduled for a final pretrial conference.

Dated this 13th day of March, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge