# INSTRUCTION NO. 1

Ladies and Gentlemen of the Jury:

Now that you have heard the evidence and will soon hear argument, it becomes my duty to give you the instructions of the court as to the law applicable to this case.  It is your duty as jurors to follow the law as I shall state it to you, and to apply the law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by the court.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every civil case – for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case, and finally, I will explain the procedures you should follow in your deliberations.

The attorneys may properly refer to the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by an attorney and that stated by the court in these instructions, you are, of course, to be governed by the final instructions of the court.

Nothing the court says in these instructions is to be taken as an indication that the court has any opinion about the facts of the case, or what that opinion is.  It is not the function of the court to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, bias, prejudice, or public

opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  That is the oath that you took and the promise you made.

The parties to this case are the plaintiff, Bruce Casias, who the court may refer to as "Mr. Casias," and the defendant, Raytheon Company, Raytheon Information Systems Company, and/or its business division: Intelligence, Information, and Services, which the court may refer to as "Raytheon."

The evidence in the case consists of the sworn testimony of the witnesses, regardless who may have called them, all exhibits received in evidence, regardless who may have produced them, and all facts which may have been stipulated.   Nothing else is evidence.

The unsworn statements and arguments of an attorney are not evidence.  What the attorneys say to you or show to you during opening statements and closing arguments is not evidence.  Their questions and objections are not evidence.  Thus, if an attorney asks a question of a witness that contains an assertion of fact, you may not consider the assertion by the attorney as any evidence of that fact.  Only the answers of the witnesses are evidence.

The legal rulings of the court are not evidence.  The comments, admonitions, and questions of the court are not evidence.

However, when the attorneys on both sides have stipulated or agreed as to the existence of a fact, the jury must accept the stipulation and regard that fact as proved.

Anything you may have seen, heard, read, or viewed outside the courtroom is not evidence, and must be disregarded entirely.

There are two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence presented by a percipient witness such as the testimony of an eyewitness or earwitness.  The other is indirect or circumstantial evidence, that is, proof of a chain of facts which point to the existence or non-existence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but requires the jury find the facts in accordance with the evidence in the case, both direct and circumstantial.

If any reference by the court or by counsel to matters of evidence – whether testimony or exhibits – does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of anyone else.  You are the sole judges of the evidence received in this case.

You are to consider only the evidence in the case.  However, in your consideration of the evidence, you are not limited to just the statements of the witnesses.  In other words, you are not limited solely to what you saw and heard as the witnesses testified.  You are permitted to draw, from the facts which you find have been proved, such reasonable inferences as you feel are justified in light of your experience. An inference is a conclusion that reason and common sense may lead you to draw from the facts which you find have been proved by a preponderance of the evidence in the case.  By permitting such reasonable inferences, you may make deductions and reach

conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

The mere number of witnesses appearing for or against a particular fact, issue, or proposition does not in and of itself prove or disprove that fact, issue, or proposition. You may find the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Any evidence as to which an objection was sustained by the court must be disregarded entirely.

Any finding of fact you make must be based on probabilities, not possibilities. A finding of fact may not be based on surmise, speculation, or conjecture.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony – if she is even permitted to do so.

Any verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Any verdict must be unanimous.

As jurors, it is your duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. However, do not surrender your honest conviction as to the weight or effect

of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case and return a just verdict based on the evidence in the case and the law as the court has presented it to you.

**INSTRUCTION NO. 2**

The following is a brief summary of the claim and defenses in this case:

Defendant, Raytheon, employed plaintiff, Bruce Casias, from November 2002 through July 22, 2016.   Mr. Casias's last position with Raytheon was as a Senior Principal Test Engineer, and he was assigned in a test engineering role to the GPS OCX Program from 2014 through the date of his departure.  The GPS OCX Program is part of a historic modernization effort to update the Global Positioning System used in military and civilian applications.  Raytheon's involvement in the GPS OCX Program is pursuant to a contract it entered into with the United States Air Force.

Mr. Casias is making his claim in this lawsuit under the Defense Contractor Whistleblower Protection Act or "DCWPA."  Mr. Casias's claim under the DCWPA is based on his assertion that Raytheon retaliated against him because he engaged in protected conduct.

Ms. Casias alleges he engaged in protected conduct when in November 2015 he complained to his manager, Joseph Hollon, who had allegedly instructed and ordered him unethically to falsify test data on the GPS OCX project for the United States Air Force by designating certain test procedures as complete when they were not.

Mr. Casias claims his first reporting was to Raytheon's senior management on the GPS OCX Program on or about November 17, 2015.  He also claims he reported his concerns to the Inspector General of the Department of Defense on or about May 16, 2016.  Mr. Casias reported to Raytheon's Internal Ethics and Business Conduct Department on May 18, 2016, which department reported after he left his employment

with Raytheon that after investigation it found no wrongdoing.  In May 2016, Raytheon

reassigned Mr. Casias to a different role within the GPS OCX Program.  Mr. Casias

alleges the reassignment was a demotion, but Raytheon contends it was a lateral

move.  Following his reassignment, Mr. Casias tendered his notice of resignation on

July 11, 2016, worked for Raytheon until July 22, 2016, and went to work for  Ball

Aerospace on July 25, 2016.

Raytheon denies it violated Mr. Casias's rights under the DCWPA.  Raytheon

maintains it did not retaliate against Mr. Casias in response to any of his claimed

protected activity.  Instead, Raytheon asserts that, based on Mr. Casias's work

performance and its legitimate business needs, it informed Mr. Casias it was giving him

a new work assignment on or about May 16, 2016.  Raytheon alleges that Mr. Casias

made an internal ethics complaint to Raytheon's Ethics Department only after he was

reassigned.  Raytheon alleges it did not have knowledge of Mr. Casias's ethics

complaints when it made the decision to reassign him to a different role within the GPS

OCX Program, and thus, could not have considered his alleged reports in reassigning

him.  In any event, Raytheon asserts it investigated Mr. Casias's internal ethics

complaint allegations and found Raytheon had not engaged in wrongdoing.  Raytheon

further asserts the Department of Defense found Mr. Casias's complaint unproven.

Raytheon also asserts Mr. Casias's reassignment was not a demotion, and that he

suffered no loss in pay, benefits, or opportunities for advancement because of the

reassignment.  Finally, Raytheon asserts Mr. Casias voluntarily resigned to commence

work with Ball Aerospace.

Instruction No. 2<br>
Page 2 of  2

## INSTRUCTION NO. 3

The parties have stipulated to certain facts.  You must accept the stipulation and regard those facts as proved.  The stipulated facts are as follows.

1.  Bruce Casias was employed with Raytheon from November 2002 through July 22, 2016.

2.  Raytheon is a technology and innovation company specializing in defense, civil government, and cybersecurity solutions.

3.  At times relevant to this case, Raytheon held a contract with the United States Air Force to build the ground station for the next generation of GPS satellites, this project was known as the "GPS OCX Program."

4.  During all times relevant to Mr. Casias's claims, while he worked for Raytheon, Joseph Hollon, Integration and Test Cross Product Team Manager of the GPS OCX Program, was his immediate supervisor.

5.  Mr. Casias held multiple roles in the GPS OCX Program during his employment with Raytheon.

6.  Raytheon maintains an Office of Ethics and Business Conduct ("Ethics Office").

7.  On or about May 16, 2016, Mr. Hollon notified Mr. Casias that Raytheon was assigning him to another role within the GPS OCX Program.

8.  On or about May 18, 2016, Mr. Casias filed an internal ethics complaint with Raytheon's Ethics Office.

9.  Mr. Casias gave his notice of resignation to Raytheon on July 11, 2016.

10.  Mr. Casias worked for Raytheon until July 22, 2016.

11.  Mr. Casias went to work for Ball Aerospace on July 25, 2016.

**INSTRUCTION NO. 4**

There is nothing particularly different in the way that a juror should consider the evidence in a trial from that in which any reasonable and careful person would deal with any very important question that must be resolved by examining facts, opinions, and evidence.  You are expected to use your good sense in considering and evaluating the evidence in the case.  Use the evidence only for those purposes for which it has been received and give the evidence a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict on anything other than the evidence received in the case and the instructions of the court.

**INSTRUCTION NO. 5**

Raytheon is a corporation, which can and may act only through its officers, employees, servants, and agents.  Any act or omission of an officer, employee, servant, or agent of a corporation, while acting within the scope of his or her employment, is an act or omission of that corporation.

The mere fact that Raytheon is a corporation does not mean it is entitled to any lesser or greater consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give an individual party.

## INSTRUCTION NO. 6

As jurors, you – and you alone – are the sole judges of the credibility of the witnesses and the weight, if any, their testimony deserves.  You may be guided by the appearance and conduct of the witnesses, by the manner in which the witnesses testified, by the character of the testimony given, and by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive, state of mind, and demeanor or manner while on the witness stand in the courtroom. Consider each witness's ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may have to either side of the case, the manner in which each witness might be affected by the outcome of the case, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause a juror to discredit such testimony.  Two or more persons witnessing an incident or a transaction may see or hear it differently, and innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

A witness may be discredited or impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony.  You may, in short, accept or reject the testimony of any witness in whole or in part.  If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility and weight, if any, as you think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars, and you may reject all the testimony of that witness or give it such credibility and weight, if any, as you think it deserves.  An act or omission is "knowingly" done if it is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you think it deserves.

Instruction No. 6
Page 2 of 2

**INSTRUCTION NO. 7**

Ms. Casias has the burden of proving his claim by a preponderance of the evidence.

To prove by a preponderance of the evidence means to prove that something is more likely so than it is not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may consider the testimony of all witnesses, regardless of who called them, all exhibits received in evidence, regardless of who offered them, and any fact that has been stipulated.

**INSTRUCTION NO. 8**

Raytheon has the burden of proving its defense, described in Instruction No. 9, by clear and convincing evidence.

"Clear and convincing" evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

**INSTRUCTION NO. 9**

The Defense Contractor Whistleblower Protection Act, or the DCWPA, protects an employee of a government defense contractor, including Raytheon, from being demoted or otherwise discriminated against for engaging in certain, specified types of protected activity.  Under the DCWPA, it is unlawful for an employer to retaliate against an employee for gross mismanagement of a Department of Defense contract or grant; or gross waste of Department of Defense funds; or a substantial and specific danger to public health or safety; or a violation of law related to the Department of Defense contract or grant.

To prevail on this claim, Mr. Casias must prove by a preponderance of the evidence each of the following three (3) essential elements:

1.  That he engaged in protected activity, as defined in Instruction No. 10; and

2.  That he suffered an adverse employment action, as defined in Instruction No. 11; and

3.  That the protected activity was a contributing factor in Raytheon's decision to take the adverse action against Mr. Casias.  A contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.

If you find Mr. Casias has failed to prove any one or more of these three (3) essential elements by a preponderance of the evidence, then you must find in favor of Raytheon, and should so indicate on the Verdict Form.

If, on the other hand, you find Mr. Casias has proven each and all of these three (3) essential elements by a preponderance of the evidence, then you must consider whether Raytheon has proved by clear and convincing evidence that it would have taken the adverse action against Mr. Casias regardless of any protected activity he undertook.

**INSTRUCTION NO. 10**

As used in element 1 of Instruction No. 9, an employee engages in "protected activity" under the DCWPA when he discloses to a management official or other employee of the contractor who has the responsibility to investigate, discover, or address the misconduct, information he reasonably believes is evidence of one or more of the following:

1. Gross mismanagement of a Department of Defense contract or grant; or

2. Gross waste of Department of Defense funds; or

3. A substantial and specific danger to public health or safety; or

4. A violation of law related to the Department of Defense contract or grant.

**INSTRUCTION NO. 11**

As used in element 2 of Instruction No. 9, Mr. Casias suffered an "adverse employment action" if he proves by a preponderance of the evidence that he was demoted or otherwise discriminated against by Raytheon.

To prove that the employment actions taken by Raytheon were "adverse employment actions," Mr. Casias must prove by a preponderance of the evidence that a reasonable employee would have found these employment actions materially adverse, meaning it well might have dissuaded a reasonable employee in Mr. Casias's circumstances from engaging in the protected activity.

**INSTRUCTION NO. 12**

In reaching your verdict on Mr. Casias's claim under the DCWPA, you should keep in mind that the law requires only that Raytheon not intentionally retaliate against Mr. Casias based on his protected conduct.  The law does not require Raytheon to use good judgment, to make correct decisions, or even to treat its employees fairly.

Therefore, in deciding Mr. Casias's claim, it is not your function to second-guess Raytheon's business decisions or act as a personnel manager, unless you find the decisions were motivated, in whole or in part, by unlawful retaliation.

**INSTRUCTION NO. 13**

The fact that instructions on the measure and types of damages have been given to you does not mean that the court is instructing the jury to award or not to award damages.  The question whether or not damages are to be awarded is a question for the jury's exclusive consideration.

If you decide to award damages, you should fix the amount using calm discretion and sound reason, not sympathy, prejudice, or speculation.

Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount.  You should use your best judgment based on a preponderance of the evidence.

**INSTRUCTION NO. 14**

If you find for Mr. Casias, you must not take into account any consideration of any future earnings or employment benefits, or any consideration of attorney fees or court costs, in deciding the amount of Mr. Casias's damages.  These matters will be decided later by the court.

**INSTRUCTION NO. 15**

Ms. Casias has the burden of proving by a preponderance of the evidence the nature and extent of his damages.  If you find in favor of Mr. Casias, you must determine the total dollar amount of damages, if any, that were caused by Raytheon.

In determining such damages, you shall consider the following:

1.  Any noneconomic losses which Ms. Casias has had or will probably have in the future, including: past and future pain and suffering, inconvenience, emotional stress, loss of reputation, and loss of enjoyment of life; and

2.  Any economic losses which Mr. Casias has had including: loss of past earnings (backpay) and/or loss of past employment benefits.

**INSTRUCTION NO. 16**

If you find Raytheon unlawfully retaliated against Mr. Casias because he engaged in protected activity under the DCWPA, then you must determine an amount that is fair compensation for Mr. Casias's losses. You may award compensatory damages for injuries Mr. Casias proved by a preponderance of the evidence were caused by Raytheon's retaliation, if any. The damages you award must be fair compensation, no more and no less.

You may award damages for any emotional distress, pain, suffering, inconvenience, mental anguish, loss of reputation, and loss of enjoyment of life Mr. Casias experienced as a consequence of the wrongful conduct. No evidence of monetary value of such intangible things as emotional distress has been introduced into evidence. There is no exact standard for setting the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any damages you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in making an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on speculation or guesswork. On the other hand, the law does not require Mr. Casias to prove the amount of his damages, injuries, and/or losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

**INSTRUCTION NO. 17**

If you find that Raytheon retaliated against Mr. Casias in violation of the
DCWPA, but find also that he has failed to prove he suffered any damages, then you
must award him nominal damages of not more than $1.00.

## INSTRUCTION NO. 18

If it becomes necessary during your deliberations to communicate with the court, you may send a note via the bailiff signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with the court regarding the issues of the case by any means other than such a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case other than in writing or orally here in open court.

If you do send a note to the court containing a question or request for further direction, please bear in mind that a response will take some time and effort.  The court must first notify counsel to return to court.  Then the court must confer with counsel, consider their arguments and, if necessary, research the question or request before reducing the answer or direction, if any, to writing.

There may be some questions or requests that under the law the court is not permitted to answer or address.  If it is improper for the court to answer the question or address the issue, the court will tell you.  Please do not speculate about what the answer to your question might be or why the court is not able to answer a particular question or address a particular matter.

You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are prohibited to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person – not even to the court – how the jury stands, numerically or otherwise, on the questions before you, until after you have reached unanimous agreement about your verdicts and answers to questions on the Verdict Form.

## INSTRUCTION NO. 19

The original written instructions are a part of the court record.  You are not permitted to write any notes on the original instructions or to deface them in any way. The original instructions and the exhibits are to be returned to the court at the conclusion of your deliberations.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions and Verdict Form.  Not only will your deliberations be more productive if you understand the legal principles on which your verdicts and answers to questions must be based, but for your verdicts and answers to questions to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the original instructions.

You may deliberate only while all jurors are present together in the jury room. You must suspend your deliberations until and unless you are all present together in the jury room.

Your deliberations will be secret.  You will never have to explain your verdict to anyone.

Any verdict must represent the collective judgment of the jury.  In order to return a verdict, it is necessary that each juror agree to it.  In other words, any verdict you return must be unanimous.

Your verdict must be based solely on the evidence received in the case.  Nothing you have seen or read outside of court may be considered.  Nothing that I have said or done during the course of this trial is intended, in any way, to suggest to you somehow what I think your verdict should be.  Nothing said in these instructions and nothing in any form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what the court thinks your verdict should be.  What any verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the evidence and the facts.

A Verdict Form has been prepared for your convenience.  You will take the Verdict Form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreperson write your answers to the questions, date, and sign, together with all other jurors, the Verdict Form.

When you have arrived at your unanimous verdict and have completed, dated, and signed the Verdict Form, your foreperson shall notify the bailiff, who, in turn, will notify me.  You shall remain in the jury room until I call for you to return to the courtroom.  When you return to the courtroom, your foreperson should bring the original instructions and Verdict Form with him or her.