**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 17-cv-02635-REB-SKC

BRUCE CASIAS,

     Plaintiff,

v.

RAYTHEON COMPANY, RAYTHEON INFORMATION SYSTEMS COMPANY, and/or
its business division: INTELLIGENCE, INFORMATION, and SERVICES,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S OPPOSED
MOTION FOR EQUITABLE DAMAGES**

---

**Blackburn, J.**

     The matter before me is **Plaintiff's Opposed Motion for Equitable Damages**

[#79],[1] filed December 6, 2019.  By this motion, plaintiff Bruce Casias seeks front pay

and associated equitable damages which come within the discretion of this court.  ***See***

***Zisumbo v. Ogden Regional Medical Center***, 801 F.3d 1185, 1203 (10th Cir. 2015),

***cert. denied***, 136 S.Ct. 1660 (2016); ***Denison v. Swaco Geolograph Co.***, 941 F.2d

1416, 1424 (10th Cir. 1991).  I have jurisdiction over this matter pursuant to 28 U.S.C. §

1331 (federal question).  Having considered carefully the motion, response, reply, and

supplemental briefs; the record; the apposite law; and the inherent equities, I deny the

motion.

     This case was tried to a jury from November 18-21, 2019, which returned a

---

[1] "[#79]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

verdict in favor of Mr. Casias on his sole claim of retaliation under the Defense

Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C. § 2409.  At trial, Mr.

Casias claimed his quondam employer, Raytheon Company, had reassigned and

effectively demoted him in retaliation for reporting what he believed to be Raytheon's

mishandling of certain aspects of the company's contract with the Department of

Defense.  (*See* **Final Pretrial Order** ¶ 3.b @ 2-3 [#63], filed November 7, 2019.)  The

jury found in favor of Mr. Casias and awarded him $43,000 in past earnings (backpay)

and benefits and $1,000,000 in noneconomic damages.  (**Jury Verdict** at 2 [#76], filed

November 21, 2019.)  Mr. Casias now seeks front pay and related benefits, including

lost bonuses, vacation benefits, 401K contributions, and interest.

      "[R]einstatement is the preferred remedy for discrimination in employment

matters[.]"  ***Bingman v. Natkin & Co.***, 937 F.2d 553, 558 (10th Cir. 1991).  However,

where reinstatement is not feasible due to unusual work place hostility or other

aggravating circumstances, an award of front pay may be substituted.  ***Anderson v.***

***Phillips Petroleum Co.***, 861 F.2d 631, 638 (10th Cir. 1988), ***overruled on other***

***grounds by Hazen Paper Co. v. Biggins***, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d

338 (1993).  "Front pay is simply money awarded for lost compensation during the

period between judgment and reinstatement or in lieu of reinstatement."  ***Pollard v. E.I.***

***du Pont de Nemours & Co.***, 532 U.S. 843, 846, 121 S.Ct. 1946, 1948, 150 L.Ed.2d 62

(2001).  ***See also Zisumbo***, 801 F.3d at 1205.

      Implicit in this formulation is the notion that the plaintiff is entitled to reinstatement

in the first instance.  Yet a plaintiff who voluntarily resigns is not entitled to reinstatement

2

or its functional equivalent, front pay.  **See Derr v. Gulf Oil Corp.**, 796 F.2d 340, 342 (10th Cir. 1986).  To recover front pay, therefore, a plaintiff who was not affirmatively terminated must establish that he was constructively discharged, that is, that his working conditions were so intolerable that a reasonable person in his position would have felt forced to resign.  **See Fischer v. Forestwood Co.**, 525 F.3d 972, 980 (10th Cir. 2008).[2]  These are mutually exclusive concepts; "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged."  **Exum v. U.S. Olympic Committee**, 389 F.3d 1130, 1135 (10th Cir. 2004).[3]

In his complaint, Mr. Casias asserted a claim for "constructive discharge." (**See Complaint** ¶¶ 53-58 at 10-12 [#1], filed November 3, 2017.)  Former Chief Judge Marcia S. Krieger (to whom this case was assigned originally) granted Raytheon's motion to dismiss that claim because constructive discharge is "a legal theory whereby a court will view an employee's ostensibly voluntary resignation as an involuntary termination when workplace conditions are so hostile and intolerable to that employee

---

[2]  Where an employee has left his employment without being terminated or constructively discharged, his employer's actions cannot be considered the cause of his lost future salary and benefits. **See Nance v. Maxwell Federal Credit Union (MAX)**, 186 F.3d 1338, 1342 (11th Cir. 1999); **Marrero v. Goya of Puerto Rico, Inc.**, 304 F.3d 7, 28 (1st Cir.  2002); **Mitchell v. Russell Lands, Inc.**, 2013 WL 12246408 at *2 n.2 (M.D. Ala. July 3, 2013).

[3]  Most federal courts follow this rule.  **See, e.g., Lulaj v. Wackenhut Corp.**, 512 F.3d 760, 767 (6th Cir. 2008); **Marrero v. Goya of Puerto Rico, Inc.**, 304 F.3d 7, 28 (1st Cir.  2002); **Hertzberg v. SRAM Corp.**, 261 F.3d 651, 659 (7th Cir. 2001), **cert. denied**, 122 S.Ct. 1070 (2002); **Nance**, 186 F.3d at 1342; **Major v. Rosenberg**, 877 F.2d 694, 695 (8th Cir.1989); **Satterwhite v. Smith**, 744 F.2d 1380, 1381 n.1 (9th Cir. 1984); **Bourque v. Powell Electrical Manufacturing Co.**, 617 F. 2d 61, 64-65 & n.8 (5th Cir. 1980); **Brown v. D.C.**, 768 F.Supp.2d 94, 101-02 (D.D.C. 2011), **aff'd**, 493 Fed. Appx. 110 (D.C. Cir. 2012).  Although several circuits recognize a very narrow exception in failure-to-promote cases, **see Hertzberg**, 261 F.3d at 660 n.8 (citing **Odima v. Westin Tucson Hotel**, 53 F.3d 1484, 1495 (9th Cir. 1995), and **Wells v. North Carolina Board of Alcoholic Control**, 714 F.2d 340, 342 (4th Cir. 1983), **cert. denied**, 104 S.Ct. 712 (1984)), no such claim was pursued in this case.

that he or she had no other choice but to resign.  It does not constitute a standalone claim."  (**Order Re: Motion for Judgment on the Pleadings** at 6 [#28], filed June 1, 2018 (citing ***Baker v. Baxa Corp.***, 2011 WL 650002 at *1 (D. Colo. Feb. 11, 2011).)  Nevertheless, she did not foreclose Mr. Casias from presenting such a theory in connection with his DCWPA retaliation claim, as to which summary judgment was denied.  Indeed, in addressing Raytheon's motion for summary judgment, Judge Krieger clearly believed Mr. Casias had "alleg[ed] an adverse action on a theory of constructive discharge" which could be pursued at trial:

> In light of the court's decision on the retaliation claim based on reassignment, and because the only difference between the reassignment or constructive discharge as the adverse action would be for purposes of calculating damages, the Court does not reach that question here.  The issue can be addressed in the proper context at trial.

(**Opinion and Order on Motion for Summary Judgment** at 5 n.2 [#46], filed March 13, 2019.)

Mr. Casias, however, did not pursue a theory that Raytheon constructively discharged him at trial.  This was not mere oversight; Mr. Casias affirmatively told this court he would not pursue any such theory of relief in connection with his DCWPA retaliation claim.  (***See* Plaintiff's Memorandum on Non-Stipulated–Competing Jury Instructions** at 4 [#54], filed October 18, 2019) (objecting to Raytheon's proposed constructive discharge instructions on ground that "[t]his is not a constructive discharge case.  Constructive discharge was dismissed by Judge Krieger in granting Defendant's Fed. R. Civ. P. 12(c) Motion to Dismiss."); **Final Pretrial Order** ¶ 3.b.4. at 2 (describing adverse employment action at issue as being "reassigned/demoted").)  Given how Mr.

Casias described and delimited his DCWPA claim, I must conclude he waived any right to claim he was constructively discharged.  *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right.") (citation and internal quotation marks omitted).

Because Mr. Casias is thus precluded from claiming he was constructively discharged, I must conclude that his decision to resign his position with Raytheon on July 11, 2016, was voluntary.  Indeed, after I asked the parties to provide supplemental briefing on this issue, Mr. Casias affirmed "[t]here was no evidence that his working conditions were so 'intolerable' that he could not stay employed [at Raytheon] – substantiating a constructive discharge claim," but rather stated he left because he had no further employment opportunities within Raytheon.  (**Plaintiff's Supplemental Brief Substantiating Award of Front Pay** at 2 [#112], filed August 31, 2020.)  Because Mr. Casias himself affirms he was not constructively discharged, he is legally precluded from recovering front pay or any of the associated prospective benefits which the instant motion seeks.[4]  Accordingly, the motion must be denied.

**THEREFORE, IT IS ORDERED** that **Plaintiff's Opposed Motion for Equitable Damages** [#79], filed December 6, 2019, is denied.

---

[4]  It is possible that the court, exercising its equitable powers, could make a factual determination as to constructive discharge even though that issue was not presented to the jury.  *Cf. Ag Services of America, Inc. v. Nielsen*, 231 F.3d 726, 730 (10th Cir. 2000) (in determining equitable claims, court is bound by jury's determination on essential factual issues common to both legal and equitable claims); *Copar Pumice Co. v. Morris*, 2009 WL 5201799 at *10 (D.N.M. Oct. 23, 2009) ("[T]he trial judge's findings on equitable claims may not conflict with the jury's determinations.").  Mr. Casias does not request such a determination, however, and in light of his clear waiver, I find it would be an abuse of discretion to do so in any event.

Dated September 14, 2020, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge