IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02635-REB-SKC

BRUCE CASIAS,

    Plaintiff,

v.

RAYTHEON COMPANY, RAYTHEON INFORMATION SYSTEMS COMPANY and/or its business division: INTELLIGENCE, INFORMATION, AND SERVICES,

    Defendant.

## DEFENDANT'S RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, RULE 59 MOTION FOR NEW TRIAL OR REMITTITUR

Raytheon[1] is entitled to judgment as a matter of law because Plaintiff failed to present evidence from which a reasonable jury might conclude he proved his Defense Contractor Whistleblower Protection Act ("DCWPA") claim.[2] No evidence shows Plaintiff engaged in protected conduct that contributed to an adverse employment action against him. Plaintiff was reassigned but retained the same salary, benefits, job title, grade, and supervisor, and his reassignment was not an adverse employment action. Even if the reassignment was an adverse employment action, it was not caused by his alleged protected activity six months prior.

---

[1] Judgment was entered against "Defendant Raytheon Company, Raytheon Information Systems Company, and/or its business division: Intelligence Information, and Services," which are referred to herein as "Raytheon."

[2] Pursuant to D.C.COLO.LCivR 7.1(A), undersigned counsel certifies he conferred with Plaintiff's counsel telephonically on October 19, 2020, regarding this opposed motion.

Alternatively, this Court should order a new trial because the weight of the evidence is against the liability verdict. Moreover, the jury's damages awards separately demonstrate the need for a new trial. The jury awarded $43,000 in economic damages and $1,000,000 in compensatory damages, yet Plaintiff suffered *no* economic consequences. This Court held "the change did not result in any loss of pay or change in Mr. Casias's grade status." (Dkt. #110 at 1). To the extent the jury awarded $43,000 in economic damages as if Plaintiff was constructively discharged, ***this Court held Plaintiff waived any theory of recovery based on constructive discharge***. (Dkt #114 at 4). The damages award shows the jury was biased, prejudiced, or impassioned, thus tainting the liability verdict and requiring a new trial. Lastly, even if the jury's damages awards were not the product of bias, they are nonetheless excessive under the standards for evaluating excessiveness, and the Court should order remittitur.

## Law and Argument

**I.   Raytheon's Motion for Judgment as a Matter of Law Should Be Granted.**

To establish a DCWPA claim, Plaintiff must prove: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the protected activity was a contributing factor in the adverse employment action. *Miller v. Inst. For Defense Analyses,* 795 F. App'x 590 (10th Cir. 2019). Plaintiff did not suffer an adverse employment action. Even if there were evidence of an adverse employment action, no evidence shows Plaintiff's claimed protected activity contributed to it.

**A.   Plaintiff Did Not Suffer an Adverse Employment Action.**

On May 16, 2016, Raytheon reassigned Plaintiff. (Trial Tr. at 47:1-7, 356:1-5; Dkt.

2

#63 at 5-6, ¶ 7). As a matter of law, the reassignment was not an adverse employment action. [3] In a retaliation case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006). The Supreme Court emphasized, "We speak of **material** adversity because we believe it is important to separate significant from trivial harms." *Id.* (emphasis in original). Thus, "reassignment of job duties is not automatically actionable." *Id.* at 71. In *Burlington*, the plaintiff received a 37-day suspension without pay, along with his reassignment. *Id.* at 71. The reassignment was considered an adverse action because it involved duties that were "more arduous and dirtier," required fewer qualifications, and was objectively considered a worse job. *Id.*

In contrast, here, unrefuted evidence established Plaintiff continued to work as a Senior Test Engineer on the GPS-OCX Program, had no change in job title or grade, and had no change in pay or benefits. (Trial Tr. at 4:15-17, 96:7-20, 131:4-14, 152:19-153:13, 189:5-6, 216:18-23). Plaintiff continued to report to the same supervisor, continued to work at the same facility, and remained eligible for the same opportunities. (*Id.* at 4:15-17, 132:19-23, 298:10-15, 301:10-19). Plaintiff was not placed on any kind of performance improvement plan, nor did he receive any disciplinary action. (*Id.* at 81:17-82:2). Plaintiff alleges he was given fewer responsibilities and fewer direct reports, but that too is insufficient. The Tenth Circuit has held: "A work assignment must result in material injury or harm to be actionable as retaliation." *Dye v. Moniz*, 672 F.

---

[3] The Court has held that Plaintiff's "claim was premised exclusively on Mr. Casias's reassignment." (Dkt. #110 at 1). The Court ruled that Plaintiff waived any theory that his DCWPA claim was supported by a constructive discharge theory. (Dkt. #114 at 4-5).

App'x 836, 840 (10th Cir. 2016). In *Dye*, the plaintiff pointed "to evidence she was given little or no work, given work outside her areas of expertise and threatened with a [performance improvement plan]." *Id.* at 841. The Tenth Circuit nonetheless affirmed summary judgment, holding: "But Dye points to **no evidence suggesting that her decreased job responsibilities affected her salary**, harmed her professional development or job prospects, or disadvantaged her in any way." *Id.* (emphasis supplied). Here, the reassignment did not affect Plaintiff's salary or job prospects. After being reassigned, Plaintiff was **recruited by another defense contractor**, and resigned from Raytheon to accept a comparable engineering position. (Trial Tr. at 56:1-10, 97:12-99:23). Similarly, Terry Plymell and Joseph Hollon provided **unrebutted** testimony that, as Raytheon employees, at various times they were reassigned to positions that changed the number of individuals reporting to them, and confirmed that such a change did not constitute a demotion. (*Id.* at 200:15-201:2, 201:13-21, 217:8-19, 325:20-326:16). Kelly Mann, Raytheon's Human Resources Generalist, confirmed that a change in the number of reports did not constitute a demotion. (*Id.* at 301:20-302:12, 307:8-10).[4] Based on the evidence, no reasonable juror could conclude Plaintiff's reassignment was a material adverse employment action.

### B. Protected Activity Did Not Contribute to the Reassignment.

Even if the reassignment were an adverse employment action, Raytheon still

---

[4] Plaintiff offered testimony from David Martinez and Karl Sheldon suggesting they **believed** Plaintiff was demoted, but both Martinez and Sheldon confirmed they had no supervisory role over Plaintiff. (Trial Tr. at 130:20-131:3, 131:15-132:18, 152:5-15).

4

would be entitled to judgment as a matter of law. There is no evidence that any protected activity by Plaintiff contributed to his reassignment. The evidence shows two possible protected activities: Plaintiff's report on November 17, 2015, to Hollon and Raytheon leadership raising ethical concerns regarding an instruction to change test data metrics, and a separate internal ethics complaint on May 18, 2016, to Raytheon's Ethics Office. (Trial Tr. at 4:18-19, 25:1-15, 27:13-18, 249:5-20; Dkt. #6 at 2, ¶ 1, 6 ¶ 9).

The May 18, 2016 complaint cannot have contributed to the reassignment, which had been communicated on May 16, 2016. As a matter of law and logic, a later event cannot have caused an earlier one. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1044 (8th Cir. 2007) ("alleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event."). In fact, Plaintiff confirmed that causation ran in the opposite direction – *i.e.*, the reassignment caused the complaint. (Trial Tr. at 108:2-12). Upholding the verdict would require evidence that the November 2015 report contributed to the May 2016 reassignment. Plaintiff attributed the reassignment to blame-shifting, not to retaliation.

> Q: How were you a scapegoat?
> A: I was directed to go do something unethical and illegal, and then they effectively blamed me for these problems….
> Q: [D]id you follow Mr. Hollon's direction?
> A: I did follow his direction.
> Q: And as a result of that, what happened?
> A: I was demoted.
> 　　　　　　　\*　　\*　　\*　　\*
> A: They directed me to falsify this data back in November of 2015, and then in May of 2016 they were holding me responsible for that. I was – feel like I was being scapegoated for the decisions by my program management.

5

(*Id.* at 48:6-13, 54:20-23). Plaintiff also testified he had no evidence that the decision maker, Hollon, was motivated by retaliation. (*Id.* at 82:21-24). The only possible alleged protected activity is the November 2015 complaint, and the only possible alleged adverse action is the reassignment. The evidence, however, shows the reassignment was not caused by any protected activity. Accordingly, Raytheon is entitled to judgment as a matter of law.

## II.     Alternatively, the Court Should Order a New Trial.

Alternatively, the Court should order a new trial pursuant to Rule 50(b)(2) and Rule 59. A new trial is required because (1) the weight of the evidence does not support the jury's liability finding, and (2) the damages awards are so excessive as to raise an inference that passion, prejudice, or some other improper cause infected the trial. Although mere excessiveness may be cured by remittitur, excessiveness that results from jury passion or prejudice requires a new trial. *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir. 1991).

### A.     The Jury's Liability Verdict is Against the Weight of the Evidence.

Under Rule 59, "the district court judge may set aside the verdict even though there is substantial evidence to support it." *B.J. Barnes & Sons Trucking, Inc. v. Dairy Farmers of Am., Inc.*, 2007 WL 315708, at *1 (D. Utah Jan. 30, 2007) (internal citations omitted). When the district court decides in its discretion the verdict is against the weight of the evidence, it may order a new trial. *See, e.g., U.S., ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 2009 WL 3161828, at *7 (D. Colo. Sept. 30, 2009) (*citing McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990)). "Indeed, the Tenth

6

Circuit has stated that 'the granting of a new trial involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself.'" *B.J. Barnes & Sons*, 2007 WL 315708, at *1 (internal citations omitted).

For the reasons described above, the weight of the evidence does not support the jury's finding that Plaintiff's reassignment was an adverse employment action. *See supra*. Additional evidence shows Plaintiff was not demoted. Other managers were reassigned and lost direct reports without it being considered a demotion. (Trial Tr. at 200:15-201:2, 201:13-21, 217:8-19, 325:20-326:16). Furthermore, the particular position to which Plaintiff was reassigned was not a dead-end demotion. Instead, the position now involves a team of 18 people, who in turn are used by 50 test engineers across the GPS-OCX program, and the individual who assumed the position after Plaintiff resigned was later reassigned to an even bigger role at Raytheon. (*Id.* at 217:23-218:25). Moreover, in his exit survey, Plaintiff said nothing about a demotion and answered that "yes" he would consider reemployment with Raytheon. (*Id.* at 311:14-312:5).

As described above, the weight of the evidence shows Plaintiff's alleged protected activity did not contribute to the reassignment decision. *See supra*. Additionally, Plaintiff offered no explanation as to why, if Hollon was motivated by retaliation, he waited six months to reassign Plaintiff to different responsibilities at the same salary. In contrast, Hollon explained his decision at length. (*Id.* at 339:9-342:11). Similarly, the lack of retaliatory motive is reinforced by evidence showing no one at Raytheon or the Air Force was concerned by what Plaintiff reported in November 2015.

7

(*Id.* at 182:12-185:1, 335:1-338:1, 342:23-343:6, 351:16-352:9). Even after Plaintiff filed a post-reassignment complaint, Raytheon and the Air Force investigated and found no wrongdoing. (*Id.* at 260:15-263:4, 263:18-264:6, 265:14-266:15).

## B. The Excessive Damages Awards Require a New Trial.

Even assuming the weight of the evidence supported the liability finding, the jury's damages awards require a new trial. Damages awards must be supported by substantial evidence. *Wulf v. City of Wichita*, 883 F.2d 842, 874 (10th Cir. 1989). A new trial should be ordered "when the jury returns a verdict in an amount which is at variance with the undisputed evidence presented at trial." *Grant v. Brandt*, 796 F.2d 351, 354 (10th Cir. 1986). The jury's award of $43,000 in economic damages requires a new trial on liability and damages because it is not supported by any evidence, much less sufficient evidence. This Court has already held there was ***no*** economic consequence from the only adverse employment action at issue in the trial, Plaintiff's reassignment in May 2016. (Dkt. #110 at 1). The only plausible explanation for the jury's $43,000 economic damages award is that the jury made the award because it believed Plaintiff was constructively discharged and the award would reflect any difference in pay at Ball compared to Raytheon. However, this Court determined Plaintiff waived his DCWPA claim under a constructive discharge theory and, thus, Plaintiff is not entitled to any damages based on the termination of his employment. (Dkt. #114 at 4-5). Under the law of the case doctrine, this Court's determination that Plaintiff waived any constructive discharge theory is binding. *See, e.g.*, *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) ("The law of the case doctrine posits that when a court

decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Because the jury awarded $43,000 in economic damages despite undisputed evidence that Plaintiff's reassignment caused no economic damages, a new trial is required.

A new trial also is required because the jury's damages awards are so excessive as to indicate prejudice, bias, or some other improper cause, thereby tainting the entire verdict. "Such bias, prejudice or passion can be inferred from excessiveness" itself. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1981). When "the court determines that the verdict was the result of passion or prejudice, or for any other reason it appears that the jury erred or abused its discretion not only on the issue of damages but also on the issue of liability, the court must unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount." *Id.* at 1168 (discussing the circumstances under which excessive damages may be cured by remittitur and when a new trial is required). The jury's awards here are not simply excessive, a mistake that can be cured by remittitur. Rather, the awards are so shockingly disconnected from the evidence as to indicate the jury was prejudiced, biased, or otherwise improperly impassioned against Raytheon. As set forth above, the $43,000 award cannot be anything but plainly excessive, since ***any*** economic damages award would be entirely without evidentiary support. The jury's shocking $1,000,000 non-economic damages award similarly demonstrates that the jury acted with prejudice, bias, or passion against Raytheon.

The excessive nature of the award is reinforced by examining the seven factors

used by courts in this Circuit to determine excessiveness in non-economic compensatory awards. The factors are: (1) the nature and severity of the conduct at issue; (2) the nature and extent of harm suffered by the plaintiff; (3) whether medical assistance was sought; (4) whether the plaintiff could continue to work in his chosen field; (5) the context of the defendant's acts; (6) corroborating, objective evidence; and (7) comparison to awards in other cases. *Seme v. E&H Prof. Sec. Co., Inc.*, 2010 WL 1553786, at *16 (D. Colo. Mar. 19, 2010).

First, there is nothing severe about the conduct at issue here. Plaintiff was reassigned to other duties on the same project, at the same facility, with the same supervisor, and at the same pay and benefits. (Trial Tr. at 96:7-20, 131:4-14, 132:19-23, 152:19-153:13, 189:5-6, 216:18-23, 298:10-15, 301:10-19).

Second, Plaintiff's "harm" involved no physical injury and consisted only of stress he claimed by being reassigned to new responsibilities at the same pay. Nothing indicates anything other than "garden variety" emotional distress. Although Plaintiff claimed the reassignment "was a contributing factor to my divorce," he gave no explanation as to how a salary-neutral reassignment in May, followed by recruitment to a comparable job in July, contributed to his divorce in October. (*Id.* at 55:11-19 56:1-3, 97:22-24). Plaintiff admitted his reputation was not damaged outside Raytheon, a conclusion reinforced by the fact he was recruited by another defense contractor. (*Id.* at 103:13-20). Any harm was short-lived, as Plaintiff was recruited to a new job within two months of the reassignment. (*Id.* at 56:1-10, 97:12-99:23).

Third, there is no evidence Plaintiff sought healthcare consultation or treatment.

Fourth, Plaintiff continued to work in his chosen field. (*Id.* at 56:1-10).

Fifth, the context of Raytheon's acts consists of: a reassignment six months after the alleged protected activity; Raytheon and the Air Force were apprised of the alleged "falsification" and were unconcerned; Plaintiff's attribution of the reassignment to blame-shifting, not retaliation; Plaintiff's admission he has no evidence the decision maker was motivated by retaliation; Raytheon's non-retaliatory explanation; an investigation by Raytheon and the Air Force yielding no evidence of wrongdoing; and Plaintiff's voluntary resignation. (*Id.* at 25:1-15, 27:13-18, 48:6-13, 54:20-23, 56:1-10, 82:21-24, 97:12-99:23, 249:5-16, 260:15-263:4, 263:18-264:6, 265:14-266:15, 311:2-312:5, 301:20-302:12, 307:8-10, 339:9-342:11).

Sixth, there was no corroborating evidence of either wrongful motive or harm.

Seventh, comparison to other cases strongly demonstrates the excessiveness of the $1,000,000 award. Courts in this Circuit have repeatedly found damages awards of far less than $1,000,000 to be shockingly excessive, even when the evidence of distress is far greater than Plaintiff's reassignment. In *Fitzgerald v. Mountain States Tel and Tel. Co.*, the plaintiffs were denied employment contracts, and one was called "white bitch" and otherwise subjected to hostile treatment. *Fitzgerald*, 68 F.3d 1257, 1260-62 (10th Cir. 1995). A clinical psychologist testified the incident would have continuing effects. *Id.* at 1265. One plaintiff testified she required medication due to the stress from the incident, and the other plaintiff testified he missed more than three weeks of work. *Id.* The Tenth Circuit concluded awards of $250,000 were "clearly" "excessive" and "tainted by passion and prejudice," and it reversed the denial of

11

defendant's new trial motion.

In *Hughes v. The Regents of the University of Colorado*, the sex discrimination plaintiff was originally told the university had "no need for her skills" and was then moved to a position with fewer responsibilities but the same pay and benefits. *Hughes*, 967 F. Supp. 431, 434-35 (D. Colo. 1996). The district court accepted that "Defendant's actions were undoubtedly hurtful and caused her emotional distress and mental anguish." *Id.* at 438. The court noted "[s]he did not suffer the emotional distress which would be expected to accompany the loss of a job or a decrease in earnings, and her degree of stress was not severe as to require counseling or other professional treatment." *Id.* The jury awarded Hughes $125,000[5] in emotional distress damages, but the district court held it was "clearly excessive." *Id.* at 438. After adjusting for inflation, the jury award to Plaintiff in this case is approximately five times the "clearly excessive" award in *Hughes*. The *Hughes* court further noted that "[d]amages awarded solely for emotional distress in discrimination cases arising under title VII [sic] and related statutory provisions are typically less than $50,000." *Id.*

In *Wulf v. City of Wichita*, a police officer was terminated in retaliation for his constitutionally protected speech. *Wulf,* 883 F.2d 842 (10th Cir. 1989). The plaintiff testified his job loss was stressful and caused him to be "angry, depressed, scared and frustrated." *Id.* at 875. The plaintiff's wife corroborated his testimony and added that "they experienced significant financial difficulties." Nonetheless, the Tenth Circuit held

---

[5] $125,000 in 1996 is currently equivalent to $206,422.08. *See* U.S. Inflation Calculator, available at https://www.usinflationcalculator.com/, last accessed August 22, 2020.

12

an award of $250,000 was "excessive." *Id.*

In *Baldonado v. New Mexico State Highway and Transportation Department*, a wheelchair-bound employee was discriminated against because of his disability, including by failures to accommodate that caused him to fall and required co-workers to carry the plaintiff down the stairs more than once when the elevator broke. *Baldonado,* 2001 WL 37125074 (D.N.M. July 6, 2001). The plaintiff presented evidence from his treating physicians, including testimony that the headaches he incurred from the fall were "totally incapacitating" and occurred "for days on end." *Id.* at *5. Another doctor testified that, although medication provided some relief, the plaintiff still reported headaches "three to four times a week." *Id.* Despite this medical evidence from multiple physicians, the court nonetheless found the jury's award of approximately $1,000,000 in emotional distress damages to be excessive. *Id.* at *4-6.

Based on the foregoing, even assuming there is evidence to support the liability verdict, the jury's award of $1,000,000 in non-economic compensatory damages is so grossly disproportionate to the evidence, and to awards in other cases, that it reflects jury bias, prejudice, or passion against Raytheon. As a result, a new trial is required.

**III.    Alternatively, this Court Should Order Remittitur.**

Even if the Court concludes a new trial is not required, the shockingly excessive damages awards cannot stand. Because the undisputed evidence shows there were no economic damages for the reassignment, that award should be remitted to zero. The undisputed evidence shows Plaintiff suffered no economic consequence from the reassignment. (Trial Tr. at 4:15-17, 96:7-20, 189:5-6, 216:18-23; Dkt. #63 at 6, ¶ 8).

13

Accordingly, that award should be zero.

The award for non-economic damages should be remitted to $50,000, an amount consistent with awards in comparable cases, *i.e.*, a short-lived reassignment at the same pay with no physical or verbal abuse. As set forth more fully above, ***none of the factors*** support a $1,000,000 non-economic damages award. *See supra*. Comparison to other cases strongly demonstrates the excessiveness of the $1,000,000 award. *See Fitzgerald*, 68 F.3d at 1260-62, 65 ($250,000 award "clearly … excessive"); *Wulf*, 883 F.2d at 875 (award of $250,000 excessive, despite termination of employment; remanded for remitted award not to exceed $50,000); *Baldonado*, 2001 WL 37125074, at *4-6 (award of $1,038,000 shockingly excessive, despite medical testimony the wheelchair-bound employee was physically injured, required medical care, and was humiliated; remitted to $500,000); *Hughes,* 967 F. Supp. at 434-35, 438 ($125,000 was "clearly excessive" and remitted to $50,000).

These cases establish that, absent physical abuse or injury, $50,000 has been a standard benchmark for emotional distress damages. In *Hughes*, the case most similar to Plaintiff's, the court remitted an excessive award to $50,000. Like Plaintiff, Hughes was reassigned but at the same pay and benefits. Like Plaintiff, Hughes presented no evidence that any professional health consultation or treatment was required. Yet even Hughes had more devastating evidence than Plaintiff. Hughes' employer told her it had "no need for her skills," and she testified the supervisor was trying to get rid of her and her career plans were destroyed. *Hughes,* 967 F. Supp. at 437. Based on the $50,000 award in *Hughes*, Raytheon suggests that if judgment or a new trial are not granted, the

14

$1,000,000 should be remitted to a compensatory award of $50,000.

## Conclusion

For all the reasons stated herein and based on the evidence admitted at trial, Raytheon respectfully requests the Court enter judgment as a matter of law in its favor. In the alternative, Raytheon requests the Court order a new trial or, alternatively, order remittitur. Raytheon seeks any further relief to which it may be entitled.

Respectfully submitted this 21st day of October, 2020.

                                        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*s/ Raul Chacon, Jr.*

Ron Chapman, Jr.
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: 214.987.3800
Facsimile: 214.987.3927
ron.chapman@ogletree.com

David L. Schenberg
7700 Bonhomme Ave., Ste. 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
david.schenberg@ogletree.com

Raul Chacon, Jr.
2000 S. Colorado Blvd.
Tower Three, Suite 900
Denver, CO 80222
Telephone: 303.764.6800
Facsimile: 303.831.9246
raul.chacon@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2020, I electronically filed the foregoing **DEFENDANT RAYTHEON COMPANY'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED R. CIV. P. 50(b), OR, ALTERNATIVELY, MOTION FOR NEW TRIAL OR REMITTITUR PURSUANT TO FED. R. CIV. P. 59** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Ralph G. Torres, Esq.
rgtorres99@aol.com

ATTORNEY FOR PLAINTIFF

*s/ Barbara J. Esquibel*
Barbara J. Esquibel, Paralegal